The opinion of the Court was delivered by
MuNR.0, J.
On the defendant’s first ground of appeal, we concur with the Circuit Judge, in overruling the motion for a nonsuit for the reasons stated in his report.
A different question is, however, presented by the grounds for a new trial; and it' is this, What was the nature and extent of the contract, between the plaintiff and the defendants, for the breach of which the present action has been brought ?
The contract was verbal, and in order that we discover its real character, in reference, both to its subject matter and duration, we must refer to the contract that existed between the witness Meetze and the defendants, from the year 1845, down to the year 1852. Meetze, in his testimony says, he made an arrangement to do the draying for the house of R. & J. Caldwell at twelve and a-half cents for a bale of cotton from the railroad, and fares within the city according to the city regulations. In detailing the conversation that took place between himself, the plaintiff, and J. C. Caldwell, one of the defendants, on the 15th of April, 1852, the time when the contract between the plaintiff and the defendants is alleged to have been *254 made, he says, “ the understanding of the contract was, that -Holmes should take my shoes.” We are thus, by the aid of the testimony furnished by this .witness, enabled to reach a point in this transaction, where we are fairly permitted to assume one thing at least, which is, that whatever may have been the nature of the existing agreement between this witness and the defendants prior to the 15th of April, 1852, the only change that was effected in it on that day, was the subrogation of the plaintiff Holmes, by the mutual consent of the parties, to all the rights and liabilities of Meetze, under it; in all other respects it was to remain unaltered.
Let us now see what was the extent of Meetze’s rights under the agreement in question. Suppose, that shortly after Meetze’s removal to Charleston, the defendants had abandoned the pursuit in which they were then engaged, and had embarked in another which no longer required his services; or suppose one, or all of the co-partners had died, thereby causing a dissolution of the firm, or that the co-partnership had been dissolved by mutual consent, as it was in 1852; could Meetze in any of these events have maintained an action against the defendants, similar to the present? But again, as mutuality is an essential element in all contracts, suppose Meetze had abandoned the defendants’ service shortly after he had embarked in it; could the defendants have maintained an,action against him for a breach of his contract ? Unless an affirmative answer can be given to these several supposed cases, it is difficult to perceive how the plaintiff, who was merely subrogated to Meetze’s rights and liabilities, and who was content to stand in his shoes, can be entitled to occupy' a more favored position than could Meetze himself, if he were the plaintiff in the action.
But it was argued, that upon the faith of the defendants’ agreement, the plaintiff was induced to make a large investment, in horses and drays, to enable him to fulfil his contract, and that in consequence of its unexpected termination, he has *255 been subjected to a heavy loss, for which the defendants should be held responsible. The obvious answer to the argument is this, that the plaintiff should have guarded against such a contingency before he adopted the contract: and if he found that he could not protect himself against it by an express stipulation in the agreement to that effect, he had only to decline its adoption, and there the matter, so far as he was concerned, •would have ended. But the same inconvenience must have happened to Meetze, had the dissolution of the firm taken place while he was a party to the contract: and if such an event had happened, in addition to the loss which he too must have sustained, by his investment in horses and drays, he might very well have swelled up the amount of his, demand against the defendants, by adding to it another item, the expense and inconvenience to which he had been subjected by his removal from Columbia to Charleston.
But whatever cause of complaint, the plaintiff may have against the defendants on this score, it is clear that it cannot avail him in the present action.
There being, then, no pretence whatever, that the defendants have been guilty of a breach of their contract with the plaintiff prior to the dissolution of their co-partnership in 1852, the period, too, when we think the contract between them finally terminated, we are of opinion that the verdict of the jury is not only unsustained by the evidence, but that it is directly contrary to law. The defendants’ motion for a nonsuit is., therefore, dismissed, but their motion for a new trial must be granted. And it is so ordered.
O’Neall, Wardlaw, Withers, WhitNer, and Glover, JJ., concurred.

Motion granted.